# United States Court of Appeals for the Federal Circuit

---

**BANNUM, INC.,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES AND DISMAS CHARITIES, INC.,**

*Defendants-Appellees*

---

2014-5085

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00140-MCW, Judge Mary Ellen Coster Williams.

------------------------------------------------------------------

**BANNUM, INC.,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

---

2014-5086

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00040-NBF, Judge Nancy B. Firestone.

———————————

Decided: March 12, 2015

———————————

JUSTIN HUFFMAN, Camardo Law Firm, P.C., Auburn, NY, argued for plaintiff-appellant in 2014-5085 and 2014-5086. Also represented by JOSEPH A. CAMARDO, JR.

ANTONIA RAMOS SOARES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee United States in 2014-5085 and 2014-5086. Also represented by RUSSELL J. UPTON, JOYCE F. BRANDA, ROBERT E. KIRSCHMAN, JR., DONALD E. KINNER.

ALEXANDER D. TOMASZCZUK, Pillsbury Winthrop Shaw Pittman LLP, McLean, VA, argued for defendant-appellee Dismas Charities, Inc. in 2014-5085. Also represented by ALEXANDER BREWER GINSBERG.

———————————

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges.*

TARANTO, *Circuit Judge.*

Bannum, Inc. protests decisions of the Bureau of Prisons of the United States Department of Justice to award two contracts to other bidders. In two actions brought in the Court of Federal Claims, Bannum complained that the awards were improper, alleging a common defect in the terms of the solicitations and, also, problems in the evaluation of competing bids. In each case, the Court of Federal Claims dismissed Bannum's suit. Finding that Bannum's proposal, by failing to commit Bannum to a

fixed price, was materially out of compliance with the terms of the solicitation, the court concluded that Bannum was not an "interested party" entitled to bring its protest under 28 U.S.C. § 1491(b).

We affirm the dismissals of Bannum's suits, but on a different basis. We conclude that, because Bannum did not adequately present its objection to the solicitations before the awards, Bannum waived its ability to challenge the solicitations in the Court of Federal Claims. We also conclude that, on appeal, Bannum failed to preserve its separate challenges to the bid evaluations. We do not reach the "interested party" ground of the Court of Federal Claims' decisions.

## BACKGROUND

In the first of the two separately filed protest actions before us on appeal, Bannum protests the government's award of a fixed-price, indefinite-delivery, requirements-type contract to intervenor Dismas Charities, Inc., for the operation of a residential reentry center for federal offenders in Tupelo, Mississippi. The government published the solicitation, Request for Proposals (RFP) No. 200-1168-SE, in February 2012, inviting interested bidders to submit initial proposals by April 23, 2012. Only Bannum and Dismas submitted offers.

Over the next fifteen months, the government sent notices to the two bidders altering the contract requirements and requesting updated proposals. Amendment No. 5, issued in February 2013, added a requirement that the facility be operated in compliance with the Prison Rape Elimination Act of 2003 (PREA), 42 U.S.C. §§ 15601–15609. The government asked both bidders to sign the amendment and submit a final proposal revision, including any necessary changes in price.

Whereas Dismas evidently signed the amendment without further ado, Bannum responded with a six-page

letter labeled "Final Proposal Revision #3 and AGENCY PROTEST," in which it restated its earlier price proposal and noted that those prices "do not, and cannot, reflect any consideration for the effects of Amendment 5" because of the "enormous amount of information [that] is required prior to pricing this new contract requirement." 14-5085 J.A. 11109. Bannum attached a signed copy of Amendment No. 5, placing an asterisk next to the term requiring PREA compliance and stating: "Subject to and limited by Bannum's response to [Final Proposal] #3 . . . submitted herewith; also, subject to Bannum's reservation of all rights and protests." *Id.* at 11115–16. Bannum repeated its objection four months later, when the government asked the bidders for final bids that confirmed their pricing after incorporating updated wage rates. On July 19, 2013, the contracting officer evaluated the offers, and on August 26, 2013, the government awarded Dismas the contract.

In September 2013, after the award, Bannum filed a protest with the Government Accountability Office (GAO), alleging defects in the government's evaluation of the proposals. When its GAO protest failed, Bannum filed suit in the Court of Federal Claims on February 19, 2014, seeking a preliminary injunction to prevent implementation of the contract. Bannum again challenged the bid evaluation as flawed and added a new allegation that the solicitation itself was "materially defective" because of the PREA-compliance requirement and the government's refusal to provide pricing guidance. 14-5085 J.A. 26. The court denied Bannum's request for preliminary relief. *Bannum, Inc. v. United States*, 115 Fed. Cl. 257, 275 (2014). In a memorandum opinion issued several weeks later, the court granted motions (by the government and Dismas) to dismiss the case, concluding that Bannum was not an "interested party" under § 1491(b) because it submitted a bid that was materially out of compliance with the terms of the solicitation. *Bannum, Inc. v. United*

*States*, 115 Fed. Cl. 148, 155–56 (2014). Accordingly, the court lacked jurisdiction to hear Bannum's suit. *Id.* at 156.

Bannum's second action differs from its first only in ways we deem immaterial. The solicitation, RFP No. 200-1182-SE, involves a different place of performance (Florence, South Carolina), a different competitor (the Alston Wilkes Society, Inc.), and several minor differences in the scope of work and evaluation criteria. But the procurement followed essentially the same path as the Mississippi procurement. The government amended the solicitation to require PREA compliance, and Bannum responded by explaining its inability to price PREA compliance and clarifying that it "reserve[d] all rights to [requests for equitable adjustments], Claims, and Protests," 14-5086 J.A. 10882, though without featuring the word "protest" as prominently as in its correspondence in the Mississippi case, *id.* at 10876.

On August 8, 2013, the government evaluated the bids and awarded the contract to Alston Wilkes. Bannum filed a protest with the GAO on August 20, 2013, asserting only that the government's evaluation process was flawed. The GAO denied the protest in November 2013, and Bannum filed suit in the Court of Federal Claims on January 16, 2014. As in the Mississippi action, Bannum reasserted its challenge to the evaluation process and newly argued that the solicitation itself was materially defective.

Both sides moved for judgment on the administrative record, and the government moved separately to dismiss for lack of jurisdiction. The court granted the government's motion to dismiss, concluding that, because Bannum submitted a non-compliant proposal, it lacked the economic interest in the outcome of the award necessary to mount a protest under § 1491(b). *Bannum, Inc. v.*

*United States*, No. 14-CV-40, 2014 WL 1373739, at *4–5 (Fed. Cl. Apr. 8, 2014).

Bannum timely appealed both decisions. We have jurisdiction under 28 U.S.C. § 1295(a)(3). We consolidated the cases for oral argument and now decide them together.

DISCUSSION

28 U.S.C. § 1491(b) grants the Court of Federal Claims "jurisdiction to render judgment on an action by an interested party objecting to" a solicitation or contract award made by a federal agency. We review the Court of Federal Claims' legal conclusions de novo and its factual findings for clear error. *Daewoo Eng'g & Const. Co. v. United States*, 557 F.3d 1332, 1335 (Fed. Cir. 2009). Where, as here, no material facts are in dispute, we review the Court of Federal Claims' determination of its own jurisdiction without deference. *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).

Because Bannum's two distinct grounds for protesting the awards—(a) a defect in the solicitations and (b) defects in the bid-evaluation process—entail different remedies and are subject to different legal standards, *see COMINT Sys. Corp. v. United States*, 700 F.3d 1377, 1382 n.4 (Fed. Cir. 2012), we address them separately.

A

A bidder that challenges the terms of a solicitation in the Court of Federal Claims generally must demonstrate that it objected to those terms "prior to the close of the bidding process." *Blue & Gold Fleet, L.P. v. United States*, 492 F.3d 1308, 1315 (Fed. Cir. 2007). If it cannot do so, the bidder "waives its ability to raise the same objection afterwards in a § 1491(b) action." *Id.*; *see also COMINT*, 700 F.3d at 1381–82.

It is undisputed that the government received notice of Bannum's dissatisfaction with the PREA-compliance requirement before awards were made. We conclude, however, that mere notice of dissatisfaction or objection is insufficient to preserve Bannum's defective-solicitation challenge. The solicitations at issue and the governing regulations put Bannum on notice of the formal requirements for filing a "protest" that would trigger an agency obligation of response and prompt resolution. Bannum did not comply with those requirements; nor did it pursue other available means of formal protest (*e.g.*, to the GAO or the Court of Federal Claims) until after the awards. In these circumstances, it waived its solicitation challenges.

Our waiver rule implements Congress's directive in the Administrative Dispute Resolution Act (ADRA) of 1996, Pub. L. No. 104-320, § 12, 110 Stat. 3870, 3874, that courts "shall give due regard to . . . the need for expeditious resolution" of protest claims. 28 U.S.C. § 1491(b)(3); *see Blue & Gold*, 492 F.3d at 1313. A waiver rule implements this statutory mandate by reducing the need for the "inefficient and costly" process of agency rebidding "after offerors and the agency ha[ve] expended considerable time and effort submitting or evaluating proposals in response to a defective solicitation." *Blue & Gold*, 492 F.3d at 1314 (internal quotation marks and citation omitted). In this context, clarity is not just readily achievable but important. Requiring that the prescribed formal routes for protest be followed (to avoid waiver) reduces uncertainty about whether the issue is joined and must be resolved, and thereby helps prevent both the wasted and duplicative expenses (of all bidders and the government) and the delayed implementation of the contract that would likely follow from laxer standards of timely presentation of solicitation challenges.

In *COMINT*, we suggested that filing a formal, agency-level protest before the award would likely preserve a protestor's post-award challenge to a solicitation, 700 F.3d

at 1382, as might a pre-award protest filed with the GAO, *id.* at 1383 (citing 4 C.F.R § 21.2 ("Protests based upon alleged improprieties in a solicitation . . . *shall be filed* prior to bid opening or the time set for receipt of initial proposals.") (emphasis added)). The rules applicable to both GAO protests and agency-level protests make clear why that should be so. The filing of a protest grants protestors certain remedies (a stay of award) and ensures that the government will resolve the matter in a timely fashion.

In the GAO, the act of filing a protest generally triggers an automatic stay of any award of the contract, 31 U.S.C. § 3553(c)(1), and requires the GAO to issue a decision within 100 days, § 3554(a)(1); *see also* § 3554(a)(2) (requiring the Comptroller General to provided expedited review in certain cases). The Justice Department's acquisition regulations, promulgated in 1998 after an executive order directed agency heads to "provide for inexpensive, informal, procedurally simple, and expeditious resolution of protests," Exec. Order No. 12979, 60 Fed. Reg. 55171, 55171 (Oct. 25, 1995), provide similar guarantees. *See* 63 Fed. Reg. 16118, 16133 (Apr. 2, 1998). Bidders that file a formal protest are entitled to a scheduling conference within five days of filing, an automatic stay of the award pending disposition of the dispute, and a guarantee of prompt resolution of the protest. *See* 48 C.F.R. § 2852.233-70(e), (i), (j).

Bannum does not dispute the availability of those means for presenting and ensuring responses to solicitation objections before an award is made, and at least two of the means—a GAO protest and an agency-level protest—were explicitly set forth in the solicitations at issue. Nor does Bannum contend that its objections amounted to a formal protest. Oral Argument at 11:45–12:05, *Bannum, Inc. v. United States*, 2014-5085, -5086 ("Bannum did not submit a formal protest but it did . . . multiple times ask for guidance."). Bannum also has not chal-

lenged any of the procedures made available to it as unduly burdensome or impractical, or asserted that there was good cause for excusing its failure to comply with them. *See COMINT*, 700 F.3d at 1382 (failure to mount a pre-award protest may be excusable where doing so "is not practicable").

Having failed to follow any of the various protest procedures available to bidders for swiftly resolving objections to the terms of the solicitation, Bannum cannot raise the same challenge in the Court of Federal Claims now that an award has been made. Bannum waived the solicitation challenge by not properly raising it before the close of bidding. *See Blue & Gold*, 492 F.3d at 1314. We therefore need not address whether, regarding its solicitation challenge, Bannum is an "interested party" under our case law, which itself has taken into account, in certain circumstances, whether a party has timely presented and diligently pressed its protest. *See, e.g., CGI v. United States*, No. 2014-5143 (Fed. Cir. Mar. 10, 2015).

B

Our conclusion that Bannum waived its challenge to the terms of the solicitation does not dispose of the separate question of whether, once we accept the PREA-compliance requirement as beyond dispute, we should conclude that Bannum is nevertheless an "interested party" under § 1491(b) with standing to protest the allegedly defective evaluation processes. As the government agreed at oral argument, at least as a general matter, a bidder cannot be expected to challenge an agency's evaluation of bids, in contrast to the terms of solicitation, until the evaluation occurs. *See* Oral Argument at 29:14–29:43. We need not address Bannum's bid-evaluation challenges, however, because we conclude that Bannum has failed to preserve those challenges on appeal.

In its complaints, Bannum pleaded grounds for protest that fall into two categories: a defect in the solicita-

tions; and defects in the bid-evaluation processes. The Court of Federal Claims in both cases ruled on Bannum's protest without treating the two types of grounds for protest separately. It concluded in both cases that, because Bannum submitted a materially non-compliant bid, its offer could not form the basis for a proper award and, consequently, that Bannum lacked standing to challenge any aspect of the procurement process.

On appeal, however, Bannum rests its argument for standing exclusively on its challenge to the solicitation, contending that, if it were to succeed in that challenge, "the [government] would be obligated to rebid the contract, and Bannum would have the opportunity to compete in the resolicitation." 14-5085 Appellant Opening Br. 7; 14-5086 Appellant Opening Br. 10 (identical language); *see also* 14-5085 Appellant Opening Br. 6, 9 (Bannum seeks "resolicitation of the contract"); 14-5086 Appellant Opening Br. 11, 12. Bannum has not argued to us that the denial of standing must be reversed, in any event, as to its defective-evaluation challenges, which it did not meaningfully mention in its briefs on appeal—either in its opening briefs or, when responding to the government's waiver argument, in its reply briefs. Bannum has not contended that it has standing independent of the resolicitation remedy it seeks or that resolicitation would be the result of a successful challenge to the evaluation processes. It has focused entirely on the solicitation challenge and has not asserted that, even if it cannot press that challenge, it nevertheless is entitled to reversal of the denial of standing to press its evaluation challenges.

"An issue that falls within the scope of the judgment appealed from but is not raised by the appellant in its opening brief on appeal" may properly be deemed waived. *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999); *see Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 800 (Fed. Cir. 1990). We see no reason to depart from that practice here.

**AFFIRMED**